CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

SEP - 2 2022

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 7:04-CR-00072 |
| v. | ) | |
| | ) | |
| RICHARD LAMONT LIGHTY, | ) | By: Hon. Michael F. Urbanski |
| Defendant | ) | Chief United States District Judge |

### MEMORANDUM OPINION

Defendant Richard Lamont Lighty, represented by counsel, filed a motion to reduce his sentence pursuant to the First Step Act of 2018, Pub. L. No. 115-015, and also pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 867. He asks that his sentence be reduced from 720 months to 240 months. The government does not contest that Lighty is eligible for consideration of a reduction of his sentence under the First Step Act but argues that because he is serving a sentence within the applicable range of the United States Sentencing Guidelines (USSG or guidelines), the court should decline to exercise its discretion to reduce his sentence. The government further argues that Lighty is not entitled to compassionate release. Resp., ECF No. 871. Lighty replied to the government's response. ECF No. 872. Having considered the arguments of the parties, the court will **GRANT in part** Lighty's motion and reduce his sentence to 324 months, or 27 years.

### BACKGROUND

On December 2, 2004, a federal grand jury returned a second superseding indictment charging Lighty with 10 counts related to distribution of cocaine base and powder cocaine as well as firearms violations. Second Superseding Indictment, ECF No. 269. On March 31, 2005,

the government filed an Information to Enhance Sentencing pursuant to 21 U.S.C. § 851, based on two prior convictions for possession of a controlled substance with intent to distribute within 1000 feet of school property. ECF Nos. 301, 301-1, and 301-2. With the enhancement, upon a determination of guilt, Lighty faced a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) (2002).

A jury trial began on April 18, 2005, but before the end of the day, Lighty entered into a plea agreement in which he pled guilty to three counts: conspiracy to distribute and to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 846 (Count 1); knowingly using and carrying a firearm and brandishing and discharging the firearm or possessing the firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3); and using or carrying a firearm, and brandishing or possessing the firearm in furtherance of a crime for which he could be prosecuted in a court of the United States, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 8). Plea Agreement, ECF No. 343 at 2-3; Guilty Plea Form, ECF No. 344. The government agreed to dismiss the remaining counts. Plea Agreement, ECF No. 343 at 4. The government further agreed to remove the "brandishing and discharging" language from Count Three, and to move to withdraw the two § 851 notices. Plea Tr., ECF No. 405 at 4; Plea Agreement, ECF No. 343 at 2.

The effect of withdrawing the two § 851 notices was that Lighty no longer faced a mandatory life sentence. The effect of withdrawing the "brandishing and discharging" language from Count 3 was that the mandatory sentence Lighty faced was reduced by 5 years.

2

PSR, ECF No. 825 ¶ 30; 18 U.S.C. § 924(c)(1)(a) (2003); 21 U.S.C. § 841(b)(1)(A) (2002). The government did not withdraw the "brandishing" language from Count 8 because it would not have changed the 25-year sentence that was mandatory at that time. Guilty Plea Tr., ECF No. 405 at 5-6.

When Lighty was sentenced in 2005, the statutory sentencing range for Count 1 was 10 years to life pursuant to 21 U.S.C. § 841(b)(1)(A); the statutory range for Count 3 was 5 years to life pursuant to 18 U.S.C. § 924(c)(1)(A)(i); and the statutory range for Count 8 was 25 years to life pursuant to 18 U.S.C. § 924(c)(1)(C)(i). The terms of imprisonment for Counts 3 and 8 had to be imposed consecutively to one another and to any other sentence. 18 U.S.C. § (c)(1)(D)(ii).

Under the guidelines, on Count 1, Lighty's sentence was based on 1.5 kilograms of cocaine base, making his base offense level 38. The offense level was increased by 4 levels for his role in the offense, giving him a total offense level of 42. PSR, ECF No. 825 ¶¶ 88-94. Lighty was considered a career offender under USSG §4B1.1 because his instant offense was a controlled substance offense and he had two prior controlled substance offenses. Id. ¶ 95. Because he was a career offender, Lighty's criminal history category was VI. His criminal history combined with the offense level of 42 rendered a guidelines sentencing range of 360 months to life. PSR, ECF No. 129; USSG Ch. 5 Pt. A. The guidelines range for Counts 3 and 8 were the statutory minimums set forth in 18 U.S.C. § 924(c), or 60 months and 300 months

respectively. Therefore, under the guidelines, Lighty's sentencing range was 720 months to life. PSR, ECF No. 129 ¶ 130; USSG § 4B1.1(c)(2)(A).[1]

On May 4, 2005, Lighty moved to withdraw the guilty plea. ECF No. 347. At sentencing on June 27, 2005, the court denied the motion to withdraw the plea. ECF No. 376. Lighty was sentenced to 360 months on Count 1, 60 months on Count 3, and 300 months on Count 8, all to run consecutively, for a total of 720 months, to be followed by a 5-year term of supervised release. J., ECF No. 383. Lighty has served approximately 217 months in prison and has a projected release date of November 16, 2057.[2]

## ANALYSIS

Lighty moves for relief under two sections of the First Step Act.[3] He argues that he is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A), which was amended by Section 603(a) of the First Step Act to allow defendants to bring motions for compassionate release, rather than limiting requests for such relief to the Bureau of Prisons. The basis for his compassionate release motion is that if he were sentenced today, he would not be subject to a minimum 30-year sentence on the stacked 18 U.S.C. § 924(c) convictions. He also argues that

---

[1] Lighty referred to the sentencing guidelines as having been mandatory at the time he was sentenced. See ECF No 867 at 2. However, Lighty was sentenced after the Supreme Court issued its decision in United States v. Booker, 543 U.S. 220 (2005), which held that the sentencing guidelines were advisory rather than mandatory. Also, the court acknowledged the advisory nature of the guidelines when Lighty pled guilty. See Guilty Plea Tr., ECF No. 405 at 14.

[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Richard Lighty").

[3] "The First Step Act" is the name of the legislative act, Public Law 115-39, that was passed by Congress on December 18, 2018. The act made changes to the compassionate release statute, 18 U.S.C. § 3582 (c)(1), and changes to the quantities of cocaine base that trigger sentences under 18 U.S.C. § 841(b)(1), as well as other changes to sentencing statutes and BOP administrative programs. Despite all the changes being part of the First Step Act, this court will refer to Lighty's motion based on changes to the amount of cocaine base that triggers statutory penalty ranges as his "First Step Act" claim and will refer to his motion based on 18 U.S.C. § 3582(c)(1) as his "compassionate release" claim.

4

under Section 404(b) of the First Step Act, which gives courts the authority to impose a
sentence for a covered offense as if Sections 2 and 3 of the Fair Sentencing Act were in effect
at the time the covered offense was committed, he is eligible for a reduction in the sentence
he received on the crack cocaine conviction.

## I. Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First
Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed
> except that—in any case—the court, upon motion of the Director of the Bureau
> of Prisons, or upon motion of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a failure of the Bureau of Prisons
> to bring a motion on the defendant's behalf or the lapse of 30 days from the
> receipt of such a request by the warden of the defendant's facility, whichever is
> earlier, may reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that does not exceed
> the unserved portion of the original term of imprisonment), after considering
> the factors set forth in section 3553(a) to the extent that they are applicable, if
> it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that
> such a reduction is consistent with applicable policy statements issued by the
> Sentencing Commission.

Therefore, Lighty's requested relief requires the court to consider (1) if he exhausted
his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons
that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is
appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

## A. Exhaustion of Administrative Remedies

The provision allowing defendants, in addition to the Bureau of Prisons ("BOP"), to bring motions under § 3582(c)(1)(A) was added by the First Step Act to "increas[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). Before bringing a motion in the district court, a petitioner must exhaust his administrative remedies. See 18 U.S.C. § 3582(c)(1)(A). To do so, a petitioner must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" Id.; United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020).

In his motion, Lighty asserted that he had exhausted his administrative remedies because he had asked the Bureau of Prisons (BOP) to file a motion for compassionate release on his behalf and 30 days had elapsed since he made his request. Mot., ECF No. 867 at 11-12. The government responded that Lighty had not shown that he exhausted his administrative remedies. Resp., ECF No. 871 at 11-12. In his reply, Lighty attached a copy of the email his attorney sent to the BOP asking that it make a motion for compassionate release on Lighty's behalf. ECF No. 872-1. The request was made on February 8, 2021, more than 30 days before Lighty filed his motion for compassionate release on March 22, 2021. Lighty thus satisfied the administrative exhaustion requirement under the second path provided by § 3582(c)(1)(A). See United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden

6

receives his request, regardless of whether the defendant exhausted his administrative remedies."). Accordingly, the court finds that Lighty has satisfied the statute's exhaustion requirements.

### B. Extraordinary and Compelling Reasons

The court must next consider whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Lighty's case. In McCoy, 981 F.3d at 284, the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so finding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280-84.

The McCoy court also found that the First Step Act made a "monumental change" to sentencing calculations under 18 U.S.C. § 924(c). Id. at 275 (citing Brooker, 976 F.3d at 230). Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i). "Under § 403 of the First

Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. Mar. 16, 2020).

In McCoy, which consolidated four cases from lower district courts, each defendant had received a decades-long sentence, largely driven by his "stacked" § 924(c) convictions. The defendant in McCoy received a "mandatory 35 year sentence . . . driven almost entirely by a 32 year minimum sentence under § 924(c)." McCoy, 981 F.3d at 285 (citing McCoy v. United States, 2020 WL 2738225, at *5 (E.D. Va. May 26, 2020)). Likewise, the defendants in United States v. Bryant "each received a 45 year mandatory minimum sentence under § 924(c), including two consecutive 20 year sentences for 'second and subsequent' convictions." McCoy, 981 F.3d at 285; see United States v. Bryant, 2020 WL 2085471, at *1 (D. Md. Apr. 30, 2020).

The McCoy court acknowledged that the change to § 924(c) does not apply retroactively to sentences imposed before December 21, 2018. Id. at 275. But the court distilled two features of stacked § 924(c) sentences that led to finding that the defendants met the "extraordinary and compelling reasons" standard: (1) "the sheer and unusual length of the sentences," and (2) the "'gross disparity' between those sentences and the sentences Congress

now believes to be an appropriate penalty for the defendants' conduct." Id. at 285. The court concluded that the district courts' consideration of "the First Step Act's declaration of the appropriate level of punishment under § 924(c)" to be proper "in assessing the defendants' cases, on an individualized basis, for compassionate release." Id. at 275. Thus, under McCoy, the district court must conduct an "individualized assessment" of the defendant's circumstances when considering whether a defendant's stacked § 924(c) sentences constitute an "extraordinary and compelling reason" warranting a sentence reduction. Id. at 286.

The government counters that McCoy was wrongly decided. However, McCoy continues to be the law in the Fourth Circuit. See, e.g., United States v. Hargrove, 30 F.4th 189, 194-95 (4th Cir. 2022) (repeating the holding in McCoy that there currently exists no applicable policy statement governing a defendant's motion for compassionate release as opposed to a motion filed by the BOP on an inmate's behalf) and United States v. Davis, No. 21-6960, 2022 WL 127900 (4th Cir. Jan. 13, 2022) (per curiam) (citing McCoy and its holding that when a defendant, rather than the BOP, files a motion for compassionate release, the court may consider any extraordinary and compelling reason for release that a defendant might raise). Therefore, the court will follow the holding in McCoy that a sentencing disparity caused by "stacked" § 924(c) sentences can warrant compassionate release.

Lighty argues that the disparity between the stacked § 924(c) sentences he received and the sentence he would receive for the same offenses today is an "extraordinary and compelling reason" for his release. Mot., ECF No. 867 at 11. Lighty's sentence is comprised of 30 years on the drug conviction, 5 years on the first §924(c) conviction and 25 years on the second §

9

924(c) conviction. Under the current statutory scheme, as Lighty had not yet been convicted of the first violation prior to committing the second violation, the mandatory minimum sentence for the § 924(c) charges would be 5 years on the first conviction and 7 years on the second conviction, because he was convicted of "brandishing" the weapon. See 18 U.S.C. § 924(c)(1)(A)(i) and (ii). Under USSG § 2K2.4(b), Lighty's guidelines sentence would be the minimum term of imprisonment required by statute, or 5 years on Count 3 and 7 years on Count 8.

Thus, if Lighty were sentenced today, he likely would be sentenced to 12 years on the weapons convictions, rather than the 30 years he currently is serving, reflecting the substantial change in "what Congress has now deemed an adequate punishment for comparable § 924(c) conduct." McCoy, 981 F.3d at 285 (quoting Redd, 444 F. Supp. 3d at 723). The court finds the "gross disparity" in sentencing between the sentence Lighty received in 2004 and the sentence he would likely receive today for the same conduct to be an "extraordinary and compelling reason" for relief under § 3582(c)(1)(A). McCoy, 981 F.3d 285–86; see also United States v. Brown, Nos. 3:15-cr-00017, 3:06-cr-00021, 2021 WL 2389881, at *10 (W.D. Va. June 21, 2021) (determining that the "gross disparity" between defendant's sentence of 120 months and a modern sentencing range of 37–46 months for the same conduct was an "extraordinary and compelling" reason warranting sentence reduction).

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they

are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .
>
> (5) any pertinent policy statement –
>
> (A) issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Turning first to the nature and circumstances of the offense, Lighty's offense conduct was very serious. The indictment and conviction in Lighty's case were based on his involvement in a very large drug distribution conspiracy that trafficked multiple kilograms of cocaine from New York and New Jersey to southwestern Virginia. PSR, ECF No. 825 ¶ 33. Lighty, described as "the principal member of the group," was identified as a member of the Bloods Street Gang from New Jersey and he organized a "Bloods set" or sub-gang in the New River Valley in Virginia. Id. Lighty distributed powder cocaine and cocaine base to other members of the conspiracy and he and co-conspirators frequently carried firearms and regularly traded guns for narcotics. Id. ¶ 34.

On one occasion, when two people were unable to pay Lighty money they owed him for drugs, he became irate and brandished a weapon and screamed about the money owed to him. He left the residence where the exchange occurred and discharged the firearm outside before fleeing. Id. ¶ 38. On another occasion, Lighty discovered that cocaine base had been stolen from him and he confronted the man who he believed had stolen the drugs at the carwash where the man worked. Lighty was armed and chased the man into the carwash where the man barricaded himself in a garage. Lighty attempted to break down the door but fled when he heard sirens. Id. ¶ 53. Lighty also gave a gun to one of his co-defendants, Quaheem Edwards, and told Edwards to intimidate an individual whom Lighty suspected was

12

cooperating with the federal investigation. Edwards lured the witness to a desolate location, put the barrel of a gun against her forehead, accused her of cooperating with law enforcement, and struck her in the head repeatedly with the gun. The woman was treated at a hospital for head wounds and released. Id. ¶ 75. Lighty's participation in the drug conspiracy, his trafficking of large quantities of cocaine, and his willingness to threaten violence against those he believed had wronged him, weigh heavily against granting a reduction in his sentence.

Prior to incarceration in the instant offenses, Lighty's criminal history included two drug distribution offenses when he was 18 and 19 years old, and two counts of sexual battery. Id. ¶¶ 99–101. He had additional arrests for assault and battery, domestic assault, and attempt to commit murder, all of which were either nolle prossed or dismissed. Id. ¶¶ 111-113. Lighty's criminal history also weighs against reducing his sentence.

On the other hand, since being incarcerated, Lighty has taken many steps to improve himself. He has taken many hours of classes, including creative writing, Spanish, yoga, and parenting classes, as well as health, re-entry, and religion-based courses. He also has attempted but not yet passed the GED exam. ECF No. 867-1 at 1-2; ECF No. 867-2 at 1-28. Lighty also has made contributions to several charities, including Hurricane Katrina relief efforts. ECF No. 867-2 at 29-49. Lighty submitted letters from several relatives indicating that they have seen evidence that he is remorseful for his actions and has transformed into a better person. Letters, ECF No. 867-3. Lighty learned to play the piano while incarcerated and has played the piano at facility events. He also has written multiple albums and screenplays with soundtracks. Mot., ECF No. 867 at 27. Id. He has written a book about spirituality and

13

personal growth and also wrote a children's book which he donated to St. Jude's Children's Hospital. Id.; ECF Nos. 867-2; 872-2.

From 2007 through 2016, Lighty had several disciplinary infractions, although none of them involved violence. ECF No. 867-1 at 5-8. He had no disciplinary incidents from 2016 until he filed his motion for relief in 2021.

Lighty's history and characteristics indicate that as a young man, he was dangerously violent with no respect for the law or for his community. However, it appears that he has put to good use the time he has been incarcerated and has matured into a person who has come to understand the consequences of his actions and now has a good chance of being a successful and law-abiding community member upon his release. The progress Lighty has made while incarcerated weighs in favor of reducing his sentence.

Turning to the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, the court finds that a sentence of less than 30 years on the firearm offenses would be sufficient to accomplish these goals—especially given Congress's current view on the appropriate punishment for Lighty's conduct. If Lighty were sentenced on the firearm offenses today, he would likely receive a sentence of 12 years rather than 30. These factors weigh in favor of a sentence reduction.

Regarding the next factor, the need to protect the public from further crimes of the defendant, the court again notes that Lighty has had no disciplinary infractions since 2016, and that his prior infractions were non-violent. This factor weighs in favor of a sentence reduction.

Considering the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, Lighty reports no medical needs, no history of mental illness, and no substance abuse other than marijuana prior to incarceration. Maintaining Lighty's sentence at 30 years would not provide him with any additional benefits.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, Lighty would face a shorter sentence for his stacked § 924(c) charges on Counts 3 and 8 if he were sentenced today. Both his statutory minimum sentence and his minimum guidelines sentence would be 12 years. This stands in stark contrast to his actual sentence of 30 years, and thus this factor weighs in favor of reducing Lighty's sentence.

Looking at the issue of sentencing disparities, Lighty received the longest sentence in this case at 720 months, with 360 of those months attributable to the firearm convictions. The second highest sentence imposed in this case was 360 months, later reduced to 292 months, and then to 262 months under changes to the sentencing guidelines, and finally reduced to 188 months under the First Step Act. ECF Nos. 381, 550, 552, 664, 836. The third highest sentence was 264 months, later reduced to 222 months and then 194 months based on Amendment 782 to the sentencing guidelines.[4] ECF Nos. 295, 706, 719. Other sentences imposed ranged from 12 months to 180 months. See ECF Nos. 296, 391, 326, 282, 334, 544,

---

[4] Quaheem Edwards received the 264-month sentence. He originally was sentenced to 180 months on drug charges and 180 months on using physical force to intimidate a witness, to run concurrently, and a consecutive 84-month sentence for violation of 18 U.S.C. § 924(c)(1)(A). J., ECF No. 295. In considering the need to avoid unwarranted sentencing disparities, the court notes that Edwards was sentenced to 264 months for possessing a gun in furtherance of a drug-trafficking offense and striking a witness with a gun to intimidate her (on Lighty's order), while Lighty received a sentence of 360 months on the firearm offenses.

665, 330, 461, 370, 540. While the sentencing court undoubtedly weighed the sentencing factors when all the defendants were sentenced, there is a 30-year difference between Lighty's sentence and the next highest sentence, which later became more than a 43-year difference. Comparing just the 360-month firearm sentence to the next highest sentence of 194 month reveals a difference of 166 months or more than 13 years. This sentencing disparity weighs in favor of a sentence reduction. None of the other § 3553(a) factors weigh in favor or against reducing Lighty's sentence.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Lighty's case. The court finds that Lighty's current sentence on the firearm offenses is greater than necessary to achieve the statutory sentencing objectives and that a lesser sentence, correctly applying the current version of the guidelines, would adequately reflect the magnitude and duration of Lighty's criminal conduct. Given the circumstances of this case, including Lighty's history and characteristics, both positive and negative, the court concludes that a sentence of 5 years on Count 3 and 7 years on Count 8 (144 months) is appropriate.

## II. The First Step Act

The First Step Act is a remedial statute "intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine." United States v. Wirsing, 943 F.3d 175, 176-177 (4th Cir. 2019). Prior to passage of the Fair Sentencing Act, a drug trafficker dealing in crack cocaine was subject to the same sentence as a trafficker dealing 100 times more powder cocaine. Kimbrough v.

United States, 552 U.S. 85, 91 (2007). The sentencing scheme had a racially disparate impact that resulted in excessive and unwarranted punishments that disproportionately fell on defendants of color. Wirsing, 943 F.3d at 177-78 (internal citations omitted). The Fair Sentencing Act reduced the crack-to-powder ratio to 18-to-1 and eliminated the mandatory minimum sentence for simple possession of crack. Id. at 178.

The Fair Sentencing Act did not apply retroactively to defendants who were sentenced before its passage on August 3, 2010, unless they could bring a motion under the narrow exception provided in 18 U.S.C. § 3582(c)(2). Id. at 178-79 (citing United States v. Black, 737 F.3d 280, 282, 286-87 (4th Cir. 2013)). After passage of the Fair Sentencing Act, the United States Sentencing Commission amended the guidelines to lower the base offense levels assigned to some drugs (Amendments 750 and 782) and provided that the amendments applied retroactively. Id. at 179 (citations omitted). The amendments allowed some defendants sentenced before August 3, 2010, to seek relief, not directly under the Fair Sentencing Act, but by means of a § 3582(c)(2) motion related to one of the amendments. Nevertheless, a reduction under § 3582(c)(2) only applied if the amendments had the effect of lowering the defendant's applicable guideline range. Id. The amendments did not operate to lower the sentences for defendants convicted of very large quantities of crack, or those whose sentences were driven not by the quantity of drugs involved, but by their status as a career offender. Id.

A district court presented with a First Step Act motion must first determine whether the sentence is eligible for consideration on the merits. United States v. Lancaster, 997 F.3d 171, 174 (4th Cir. 2021). The sentence under consideration must be a "covered offense" under

section 404(a) of the First Step Act. Id. Covered offenses include violations under 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (b)(1)(C). Id. (citations omitted).[5] The offense must have been committed before passage of the Fair Sentencing Act, i.e., before August 3, 2010. Id. (citations omitted). The motion must be addressed to the court that imposed the sentence. Id. (citations omitted). The sentence must not have been previously imposed or previously reduced under the First Step Act. Id. at 174-75 (citations omitted). If a court determines that a sentence qualifies for review on the merits, the court has discretion to impose a sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed. Id. at 175.

### A. Eligibility for Relief

In Lighty's case, his conviction for conspiracy to possess with intent to distribute more than 50 grams of cocaine base is a covered offense. He was convicted prior to August 3, 2010, for violating 21 U.S.C. § 841(b)(1)(A). At the time he was convicted, an offense involving 50 grams of cocaine base was penalized under 21 U.S.C. § 841(b)(1)(A) with a sentencing range of ten years to life. After passage of the Fair Sentencing Act, an offense involving the same amount of cocaine base would be penalized under 21 U.S.C. § 841(b)(1)(B) with a penalty range of five to forty years. Accordingly, Lighty is eligible for relief under the First Step Act and the court may impose a sentence as if the Fair Sentencing Act were in effect at the time he was convicted.

---

[5] After Lancaster was decided, the Supreme Court held in Terry v. United States, 141 S.Ct. 1858, 1863 (2021), that petitioners charged with an offense in violation of 18 U.S.C. §§ 841(a) and (b)(1)(C) are not eligible for relief under the act because Congress did not directly alter the penalties in Subsection (C).

**B. Available Relief**

In United States v. Collington, 995 F.3d 347 (4th Cir. 2021), the court discussed the interplay between Section 404 of the First Step Act and 18 U.S.C. § 3582(c). The court explained that while sentence modifications under § 3582(c)(2) are limited in scope and allow defendants to receive only the benefit of a guidelines amendment, modifications under the First Step Act are brought under § 3582(c)(1)(B), which allows courts to "impose" a new sentence. Collington, 995 F.3d at 353-54. The court had previously held that when imposing a sentence under section 404 of the First Step Act, the court must recalculate the guidelines sentence and correct any guidelines error. United States v. Chambers, 956 F.3d 667, 668, 672-74 (4th Cir. 2020).

> Accordingly, we both allow and require more of a sentencing judge in the First Step Act context than the § 3582(c)(2) context. First, district courts must accurately recalculate the Guidelines sentence range. Compare Chambers, 956 F.3d at 672, with [Dillon v. United States, 560 U.S. at 817, 821, 130 S.Ct. 2683 (2010)] (holding that a district court may only "substitute the amended Guideline range" in § 3582(c)(2) proceedings). Second, and relatedly, district courts must correct original Guidelines errors and apply intervening case law made retroactive to the original sentence. Compare Chambers, 956 F.3d at 672–74, with Dillon, 560 U.S. at 831, 130 S.Ct. 2683 (holding that district courts lack the discretion to correct errors unaffected by a Guidelines amendment). Third, the court must consider the § 3553(a) factors to determine what sentence is appropriate. See Chambers, 956 F.3d at 674. Unlike sentence modification proceedings under § 3582(c)(2)—which limit use of the § 3553(a) factors to determining simply whether to reduce a sentence to within a predetermined range—we permit courts to use the § 3553(a) factors to more comprehensively shape sentencing decisions and even depart downward from the new Guidelines range. Compare id., with Dillon, 560 U.S. at 830, 130 S.Ct. 2683.

Collington, 995 F.3d at 355 (emphasis in original).

The court clarified that although defendants are not entitled to plenary resentencings under the First Step Act, courts should make a holistic resentencing determination, considering the 18 U.S.C. § 3553(a) factors "to make substantially more robust resentencing decisions than in § 3582(c)(2) proceedings." Collington, 995 F.3d at 356. Also, while courts have discretion in granting relief under the First Step Act, a court abuses its discretion if it leaves in place a sentence that exceeds the statutory maximum established by the Fair Sentencing Act. Id. In addition, when a court exercises its discretion, First Step Act resentencing decisions must be procedurally and substantively reasonable. Id. at 358.

To determine the sentence that would have been imposed had the Fair Sentencing Act been in effect, the court engages in a brief analysis that involves recalculating the sentencing guidelines in light of intervening case law and conducts a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a). In conducting the § 3553(a) analysis, the court may take into account the defendant's conduct after sentencing. Id.

> [T]he analysis is not intended to be a complete or new relitigation of Guidelines issues or the § 3553(a) factors. Rather, the scope of the analysis is defined by the gaps left from the original sentence to enable the court to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening circumstances. If, after conducting the analysis, the court determines that the sentence would not be reduced, then no relief under the First Step Act is indicated.

Id.

Before recalculating the sentencing guidelines, the court will address a point the government made about irregularities in the plea agreement. As mentioned above, the parties entered into the plea agreement after the first day of trial had commenced in this case. Review

20

of the plea agreement shows that handwritten changes were made to it and that the government did not initial the changes and did not sign the agreement. Plea Agreement, ECF No. 343.

In addition, the plea agreement refers to the charges in the "indictment," and not to the "second superseding indictment." Id. at 343. However, comparing the original indictment, the second superseding indictment, and the plea agreement shows that counts cited in the plea agreement correspond to the second superseding indictment. See Indictment, ECF No. 3; Second Superseding Indictment, ECF No. 269; and Plea Agreement, ECF No. 343. Also, at the plea hearing, the government recited the terms of the agreement that corresponded to the second superseding indictment. Guilty Plea Tr., ECF No. 405 at 3-5. Therefore, although there may be a mistake in the reference to the indictments, the plea agreement appears to refer to the second superseding indictment. The description of the plea agreement by the government at the hearing also indicates that the government agreed to the terms despite the lack of initials and signature.

However, this conclusion this does not clear up all the inconsistencies. The government points out that the plea agreement references only the threshold drug weight of 50 grams of cocaine base in Count 1, and not the 5 kilograms of powder cocaine alleged in the second superseding indictment. Second Superseding Indictment, ECF No. 269; Plea Agreement, ECF No. 343 at 1. At the plea hearing, the court stated and Lighty agreed that he was pleading guilty to both the 50 grams of cocaine base and the 5 kilograms of powder cocaine. Plea Tr., ECF No. 405 at 10. A government witness also testified that Lighty traveled from the Western

21

District of Virginia to the New York City and New Jersey areas to obtain multiple kilograms of cocaine base and powder cocaine. Id. at 22. Nevertheless, the judgment entered in the case makes no mention of powder cocaine. J., ECF No. 383 at 1. Nor was there more than a very cursory mention of powder cocaine at the sentencing hearing. See Sentencing Tr., ECF No. 406 at 20-21, 23-26, 28-29. Moreover, the PSR does not mention powder cocaine when making the offense level computations. PSR, ECF No. 825 ¶¶ 87, 88. Also, in the Fourth Circuit opinion affirming Lighty's conviction, the court stated that Lighty pled guilty to one count of conspiring to distribute cocaine base and makes no mention of powder cocaine. United States v. Lighty, 224 F. App'x 281 (4th Cir. Apr. 19, 2007). In addressing Lighty's motion for relief under 28 U.S.C. § 2255, the court stated that "Lighty pled guilty to conspiring to possess with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 846 ...." Mem. Op., ECF No. 618 at 1.

Typically, if there is a discrepancy between a written judgment and the sentence pronounced orally at a hearing, the oral pronouncement will control. United States v. Osborne, 345 F.3d 281, 282 n.1 (4th Cir. 2003). However, this case does not present that issue. Rather, here, there is a discrepancy between what Lighty pled to at the guilty plea hearing and what transpired at the sentencing hearing. Although at the guilty plea hearing the court recited and Lighty agreed that he was pleading to conspiring to distribute 5 kilograms of powder cocaine, nothing that occurred later in the proceedings reflects that aspect of the case. Despite Lighty's agreement that he was pleading guilty to distributing powder cocaine, in the absence of a judgment stating that he was convicted of distributing powder cocaine, and with no finding

22

by the court at sentencing that Lighty was convicted or sentenced for distribution of powder cocaine, the court concludes that it cannot find that Lighty was convicted of distributing powder cocaine.

### C. Guidelines Range

The court first notes that if Lighty were sentenced today, he would not be considered a career offender under the guidelines. The PSR states that Lighty was classified as a career offender under USSG § 4B1.1 because his instant offense was either a crime of violence or a controlled substance offense and he had at least two prior felony convictions for either a crime of violence or a controlled substance offense. PSR, ECF No. 825 ¶ 95. However, under United States v. Norman, 935 F.3d 232, 241 (4th Cir. 2019), convictions for conspiracy to distribute drugs are no longer considered controlled substance offenses under USSG § 4B1.2. As the Fourth Circuit reasoned, because the "generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. Norman, 935 F.3d at 237-38 (applying the "categorical approach" set out in Taylor v. United States, 495 U.S. 575, 600-02 (1990)). Lighty was convicted of conspiracy to possess with intent to distribute cocaine base. J., ECF No. 383. Accordingly, if he were sentenced today, he no longer would be considered a career offender under § 4B1.2. Without the career offender designation, Lighty's criminal history category is V rather than VI. See PSR, ECF No. 825 ¶ 106.

While Norman was not made retroactively applicable on collateral review, the Supreme Court recently clarified that district courts considering First Step Act motions may consider

intervening changes in law or changes in fact in adjudicating a First Step Act motion. Concepcion v. United States, 142 S.Ct. 2389 (2022). The Court cautioned that when considering a First Step Act motion, a district court must first calculate the guidelines range as if the Fair Sentencing Act had been in place, and then consider nonretroactive changes in selecting or rejecting an appropriate sentence. Id. at 2402 n.6. The court will do so below.

If Lighty were sentenced today, his guidelines sentence on Count 3 would be 60 months and his guidelines sentence on Count 8 would be 84 months, which are the statutory minimum sentences for those offenses. Thus, the court starts with a guidelines sentence of 144 months on Counts 3 and 8. The 144 months must be served consecutively to any other sentence imposed.

In determining what the guidelines sentence on Count 1 would be today, the court must first determine the amount of cocaine base for which Lighty was held responsible. At the sentencing hearing, the court found it unnecessary to determine the exact amount of the cocaine base involved in the conspiracy because it was "well above 1.5 kilograms of cocaine base," or "considerably more than that what [was] necessary for it to become a level 38." Sentencing Tr., ECF No. 406 at 28.[6]

The government argues that it is impossible to calculate what the appropriate guidelines range would be today because the court did not make a finding as to the drug weight, other than it being more than 1.5 kilograms. The probation officer testified that she calculated that

---

[6] At the time Lighty was sentenced, a drug weight of 1.5 kilograms or more resulted in a base offense level of 38, which is the highest possible level under § 2D1.1 of the guidelines.

Lighty was responsible for 101 kilograms of cocaine base. Sentencing Tr., ECF No. 406 at 20. She also testified that based on Lighty's admissions, she found him to be responsible for 24 kilograms of cocaine base. Id.; PSR, ECF No. 825 ¶ 82.

If Lighty were found responsible for 101 kilograms of cocaine base today, his base offense level would continue to be 38, increased by 4 points for his role in the conspiracy to 42. Regardless of his criminal history category, his guidelines sentencing range would be 360 months to life. USSG Ch. 5 Pt. A. Similarly, if Lighty were responsible for 24 kilograms of cocaine base today, his offense level would be 36, increased by 4 levels to 40. Whether his criminal history category was V or VI with the career offender designation, his guidelines sentence would be 360 months to life. Id.

If Lighty were responsible for 1.5 kilograms of cocaine base today, his base offense level would be 32. Adding 4 points for his role in the conspiracy would bring it to a 36. Lighty's status as career offender makes his criminal history category a VI and gives him a sentencing range of 324 to 405 months. If Lighty is not considered a career offender, his criminal history category would be V and his guidelines range would be 292 to 365 months.[7]

---

[7] In 2015, Lighty moved for a sentence reduction under Amendment 782. The court denied it, noting that "Amendment 782 lowers defendant's total offense level to a level 37. However, because defendant is a career offender having a criminal history of category VI, his guideline range for Count 1 remains the same, 360 to life. Thus, Amendment 782 does not operate to reduce defendant's sentence." ECF No. 720. This rationale is confusing, because Amendment 782 to the guidelines generally reduced by two levels the offense levels assigned to the drug quantities listed in USSG § 2D1.1 and applied retroactively. United States v. France, 637 F. App'x 733, 734 n.* (4th Cir. Feb. 1, 2016). If Amendment 782 was applied to Lighty's case, it would have the effect of lowering his base offense level to a 34 and his total offense level to 38. The court finds that the determination that Lighty's total offense level was a 37 was a typographical error and that his total offense level would have been a 38. This error did not affect the court's determination that Lighty was not entitled to relief.

This case highlights some of the challenges presented in First Step Act cases when courts apply new statutes and case law to factual findings made many years previously. Collington instructs that analysis under the First Step Act is not intended to be a complete or new relitigation of guidelines issues or the § 3553(a) factors. The court is limited to analyzing the "gaps left from the original sentence" to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening circumstances. Collington, 995 F.3d at 358. Given that the only factual finding by the court was that Lighty was responsible for "considerably more" than 1.5 kilograms of cocaine base, and the fact that the PSR calculation was based on 1.5 kilograms of cocaine base, the "gap" in Lighty's sentence is the amount of cocaine base for which he should be held responsible if he were sentenced today.

The court finds that based on the testimony of the probation officer at the sentencing hearing and the finding in paragraph 82 of the PSR, Lighty was responsible for 24 kilograms of cocaine base during the pendency of the conspiracy. This is the amount found by the probation officer based on Lighty's having told her that he traveled to New York or New Jersey two or three times a month and picked up "a quarter of a kilo each time[.]" Sentencing Plea Tr., ECF No. 406 at 20-21; PSR, ECF No. 825 at 82. A finding that Lighty was responsible for 24 kilograms of cocaine base is consistent with the court's comment that he was responsible for "considerably more" than 1.5 kilograms of cocaine base. Sentencing Tr., ECF No. 406 at 28. It also is consistent with another comment by the court that Lighty may not have been responsible for as much cocaine base as was indicated in the PSR. Id. at 29.

26

Finding Lighty responsible for 24 kilograms of cocaine base gives him an offense level of 36, USSG §2D1.1(c)(2), increased by 4 levels to 40. If the career offender guideline is not applied, Lighty has a criminal history category of V. Taken together, his sentencing guidelines range remains 360 months to life on the cocaine base charge. USSG Ch. 5 Pt. A.[8] The court originally sentenced Lighty to 360 months on Count 1, undoubtedly persuaded that the severity of his offense precluded giving Lighty a sentence below the guidelines. However, as discussed above, in the last 18 years Lighty has been incarcerated, he appears to have turned his life around and to have developed a sincere interest in living a law-abiding life. The Supreme Court made clear in Concepcion, 142 S.Ct. at 2396, that a district court adjudicating a First Step Act motion may consider not only changes in law, but also changes in fact, such as an inmate's behavior in prison.

When the court considers the steps Lighty has taken to improve himself, and the fact that he has not had a disciplinary infraction in 6 years, it finds that a reduction in his crack cocaine sentence from 360 months to 180 months is appropriate. Added to the 144-month sentence for the firearm offenses, a sentence of 180 months gives Lighty a total sentence of 324 months, or 27 years. This sentence both accounts for the severity of his conduct and the positive changes he has made while in prison. The sentence is 130 months longer than the next longest sentence in the conspiracy and thus reflects Lighty's leadership role. Accordingly, for all the reasons discussed herein, the court reduces Lighty's sentence on the cocaine base

---

[8] Lighty also argues that his criminal history category is overstated and should have been IV rather than V. Mot., ECF No. 867 at 19-20. However, even with a criminal history category of IV, a base offense level of 40 based on drug weight results in a sentencing range of 360 months to life. USSG Ch. 5 Pt. A.

conviction to 180 months and the sentence on his firearm convictions to a consecutive sentence of 144 months, for a total of 324 months.

## CONCLUSION

The court finds that a sentence of 324 months is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law. Accordingly, the court **GRANTS in part** Lighty's request for compassionate release and a reduction of his sentence under the First Step Act, ECF No. 867, and reduces his sentence to 324 months.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: September 2, 2022

Michael F. Urbanski
Chief United States District Judge

28